THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC WARD, Defendant-Appellant.

First District (3rd Division)   No. 85—3161

Opinion filed March 11, 1987.

James J. Doherty, Public Defender, of Chicago (Mark Stein, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Christopher J. Cummings, and Michael L. Vittori, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

After a jury trial, defendant was convicted of aggravated criminal sexual assault and aggravated kidnaping and sentenced to serve concurrent 19-year prison sentences. On appeal, defendant contends that the trial court committed reversible error in refusing to admit evidence showing complainant's motive to testify falsely. We agree.

Complainant testified that while walking to a bus stop on September 14, 1984, she was abducted by defendant, forced into a basement, threatened with a trowel, and forced into intercourse and other sexual acts. She testified that she was taken into an alley after the incident and left there and that she told a bypasser of the attack and asked to use a telephone to call police. When an officer arrived, she directed him to a house at 5914 South Wolcott and told him that the attack had occurred there. That house was the part-time residence of defend-

ant and the full-time residence of other members of his family. Complainant and police officers testified that she directed them to the basement of the building and identified two items found there as the tool used to threaten her and a necklace taken from her during the attack. She gave police officers a description of her assailant, but no arrest was made at the scene. Defendant, after hearing that he was sought by police, turned himself in approximately three weeks later.

On cross-examination, complainant denied that she had seen defendant or been at 5914 South Wolcott before the incident. She also denied knowing defendant's brother, Aron Michael Ward, and said that she neither knew nor had heard of Eugene Benjamin.

Before the presentation of any witnesses for the defense, the State objected *in limine* to the testimony of Aron Michael Ward, brother of defendant. Defense counsel expected Aron Ward to testify that he and Eugene Benjamin were friends since childhood; that Benjamin and complainant were boyfriend and girlfriend; that Benjamin and complainant had visited him at 5914 South Wolcott on more than one occasion and had been in the basement of the house; that he and Benjamin had been charged with murder approximately two years earlier; and that his brother, the defendant, had testified for the State in the trial which resulted in Benjamin's conviction and 40-year prison sentence.

The court ruled that testimony about complainant's relationship with Benjamin was inadmissible:

"THE COURT: *** [A]bsent her expressed threat, expressed statement that she would in some way get retribution, revenge, get even for Eric Ward testifying against her alleged boyfriend back then, I don't think that it is probative evidence. I don't think it is anything more than conjecture or speculation.

\* \* \*

THE COURT: Assuming she does know Benjamin that whole Benjamin incident, Benjamin trial is irrelevant and immaterial and nothing more than speculation unless you can show that she expressed a threat to get even, to seek revenge against Eric Ward for his testifying against Benjamin.

\* \* \*

THE COURT: So I'm going to disallow any testimony concerning [complainant's] relationship with Benjamin, concerning the past trial of Benjamin, concerning Eric Ward's being a witness against Benjamin in this murder case unless you can provide the necessary missing link, i.e. Expressed threats, expressed statement of revenge by [complainant] against Eric

Ward."

Aron Michael Ward testified that he knew complainant and that she had visited him at 5914 South Wolcott on more than one occasion. Defendant testified that he had seen complainant on several specific occasions:

"[MR. MULARSKI, defense counsel]: And where did you see her other than the time in Lindblom Park in July?

[Defendant]: I seen her in the month of August the year 1982 when I was in court testifying against her boyfriend.

MR. RUECKERT [prosecutor]: Objection, judge.

THE COURT: Sustained. Mr. Mularski. (Discussion off record.)"

Defendant was not allowed to present any evidence that he had testified against complainant's boyfriend. This was error.

■ A showing of bias or motive to testify falsely is an accepted method of impeaching a witness. (*People v. Lenard* (1979), 79 Ill. App. 3d 1046, 398 N.E.2d 1054.) A court should allow a criminal defendant wide latitude to make such a showing by direct and positive evidence; this latitude is particularly important where the State's case rests almost entirely on the credibility of its witnesses. *People v. Howard* (1983), 113 Ill. App. 3d 380, 447 N.E.2d 473.

■ The case at bar presents such a situation. Complainant's testimony was the only evidence linking defendant with the alleged crime. Therefore, defendant should have had every opportunity to effect her impeachment. Evidence that defendant helped imprison complainant's boyfriend, if believed by the jury, would have tended to impeach complainant's testimony since it would have shown a basis for hostility toward defendant and perhaps cast doubt on her denials of prior knowledge of Benjamin and the Ward brothers. We find no precedent for the trial court's requirement of an explicit threat by complainant; we believe that even without such a threat, evidence that defendant was a prosecution witness in the murder trial of prosecutrix' boyfriend is sufficiently direct and probative of possible motive or bias to be heard by the jury.

■ The State contends that no foundation was laid for the testimony at issue. This contention is contrary to the record. Complainant was asked on cross-examination if she had been to 5914 South Wolcott before the incident, if she had prior knowledge of defendant or his brother, and if she knew or had heard of Eugene Benjamin. She was thus confronted with the substance of the testimony that would have been introduced to impeach her; this confrontation was a proper foundation for the testimony.

■ The State also claims that there is no reasonable possibility that defendant would have been acquitted had the questioned testimony been admitted and that any error by the trial court in refusing to admit evidence was harmless. We disagree. The evidence characterized by the State as "overwhelming" was linked to defendant only by complainant's testimony. The alleged semen stain on the basement floor at 5914 South Wolcott was not tested by police technicians. Neither the necklace nor the trowel found at the scene was tested for fingerprints. No other evidence served to identify defendant as the assailant. A failure to allow proper impeachment of a crucial witness cannot be deemed harmless. Accordingly, we hold that the trial court's refusal to admit defendant's impeachment evidence was error, and we reverse defendant's conviction and remand for new trial.

Reversed and remanded.

McNAMARA, P.J., and RIZZI, J., concur.