371 S.E.2d 609
**STATE of West Virginia**
v.
**Patricia BROWN.**
No. 17563.
Supreme Court of Appeals of West Virginia.
July 18, 1988.

682

Richard Thompson, Wayne, for Patricia Brown.

Charles G. Brown, Atty. Gen., Mary Rich Maloy, Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

The defendant was indicted on a charge of first-degree murder. The defendant was found guilty of involuntary manslaughter after a jury trial, and she was sentenced to one year in jail. On appeal, the defendant assigns seven errors allegedly made by the trial court. We affirm.

■ For her first assignment of error, the defendant asserts that the trial court restricted her right to introduce evidence of the character and reputation of the decedent to show that he was the aggressor and that she acted in self-defense. We disagree. Rule 405(b) of the *West Virginia Rules of Evidence* provides:

> ...In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Our review of the record shows that the victim's violent nature was directed not only toward the victim but toward others as well. There was evidence that the deceased had beaten up his own mother and that he had "cut up" two men at another tavern. Rule 403 of the *West Virginia Rules of Evidence* provides:

> ...Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We believe the omitted evidence would have been cumulative of other evidence, and we find no error.

■ For her second assignment of error, the defendant asserts the trial court erred in ruling that the State could not be prevented from cross-examining the defendant's character witnesses by asking if the witness was aware the defendant had shot at her ex-husband. In Syllabus Point 4 of *State v. Banjoman,* 178 W.Va. 311, 359 S.E.2d 331 (1987), we discussed the rules surrounding cross-examination of a defense character witness:

> The cross-examination of a defendant's character witnesses with regard to questions as to the witness's knowledge of specific instances of the defendant's misconduct is confined by certain limitations. There must initially be, by way of an *in camera* hearing, a disclosure of the proposed specific misconduct questions. The State must produce documents or witnesses from which the court may determine whether there is a good faith basis in fact that the misconduct actually occurred and would have been known to some degree in the community. A second limitation requires that the specific misconduct impeachment relate to facts which would bear upon the character traits that have been placed in issue by the character testimony on direct examination. Finally, the court must make the ultimate determination as to whether the probative value of the defendant's specific incident of misconduct, which is the subject of the cross-examination, outweighs its prejudicial value.

The record reveals that no *in camera* hearing was held, and the Court did not indicate that a limiting instruction would be given. The Court did not make a determination as to whether the probative value of the alleged misconduct, even if it occurred, outweighed its prejudicial effect. Therefore, the court erred; however, we find the error harmless.

■ The State had a strong case. Although there was no *in camera* hearing, no limiting instruction, and no analysis of the prejudice/probative value balance as required under *Banjoman,* a hearing was *not requested.* Our conclusion about harmless error proceeds from a reading of the entire record which reveals that had a *Banjoman* hearing been held, all the criteria for asking the question on cross-examination would have been met.

■ For her third assignment of error, the defendant asserts that the trial court erred in refusing to direct a verdict on each possible homicide verdict. We disagree. In Syllabus Point 4 of *State v. Johnson,* 159 W.Va. 682, 226 S.E.2d 442 (1976), we stated:

> "Upon the motion to direct a verdict for the defendant, the evidence is to be viewed in the light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." Point 1, Syllabus, *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974).

The record reveals that the defendant admitted shooting the decedent, that she obtained a gun prior to the shooting, that she failed to fire a warning shot or make a verbal warning, that the decedent was not armed, and the defendant seemed unwilling to avoid confrontation. Consequently, the elements of malice, premeditation and intent were supported by the evidence. In these circumstances, viewing the evidence in the light most favorable to the prosecution, there was substantial evidence on which the jury could have found the defendant guilty on all possible homicide verdicts. The trial court committed no error.

■ For her fourth assignment of error, the defendant asserts that the trial court erred in refusing to give proposed Defendant's Instruction No. 9, which read:

> The Court instructs the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has the

right to arm himself for his own necessary self-defense.

In Syllabus Point 2 of *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972), we set forth the standard for assessing the propriety of refusing a proper instruction supported by the evidence:

" 'In this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested.' Syllabus Point 4, *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951)."

State's Instruction No. 4 read:

The Court instructs the jury that where sufficient evidence has been introduced to create a reasonable doubt that the killing of Dwight Spence resulted from the defendant acting in self-defense, then the State must prove beyond a reasonable doubt that the defendant was not acting in self-defense. You must find from the facts and circumstances in the case, that the defendant has reasonable grounds to believe, and did believe that the danger of death or great bodily harm was imminent, and that the killing of Dwight Spence was necessary to preserve her own life, or to protect herself from great bodily harm.

While these two instructions are not the same, the giving of State's Instruction No. 4, also on self-defense, covered self-defense adequately when we look at the totality of the trial.

If the defendant had been found guilty of first degree murder, where possession of a gun is *prima facie* evidence of premeditation, we would find the court's failure to give the defendant's instruction on the right to arm oneself reversible error. However, in light of the jury's verdict of involuntary manslaughter, we find that the general self-defense instruction offered by the state and given by the court adequately stated the law as it would apply to a determination of self-defense as a defense to a charge of involuntary manslaughter.

■ The defendant next asserts that the trial court erred in his refusal to sustain the defendant's objection to the prosecu-

tor's definition of involuntary manslaughter as an accidental killing. Specifically, the defendant objected when the prosecutor said in closing argument:

"If you find that Dwight Spence was killed by Patricia Brown unintelligently while she was acting unlawfully, you have an accidental killing, which is involuntary manslaughter. If you find that he was killed unlawfully while she was in the commission of a lawful act, then you've got an accidental killing." (Tr. 329)

The prosecutor's description of involuntary manslaughter as an accidental killing was not improper. In Syllabus Point 2 of *State v. Cobb,* 166 W.Va. 65, 272 S.E.2d 467 (1980), we stated:

"A person may be guilty of involuntary manslaughter when he performs a lawful act in an unlawful manner, resulting in the unintentional death of another." Syl. pt. 2, *State v. Lawson,* 128 W.Va. 136, 36 S.E.2d 26 (1945).

*See also, State v. Vollmer,* 163 W.Va. 711, 259 S.E.2d 837 (1979). As such, involuntary manslaughter may be committed as the accidental or unintended death of another. The proper legal definition was submitted to the jury in State's Instruction No. 5 as well as at the time the prosecutor referred to it as an accidental killing. We find no error.

■ For her sixth assignment of error, the defendant asserts that the trial court committed error by overruling her objection to the impaneling of nine jurors who had served on a jury in a recent murder trial. We disagree. In Syllabus Point 4 of *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984), we stated:

"The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court. (Citations omitted)" Syllabus Point 4, *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199 (1983).

The record does not indicate any evidence of the bias or prejudice of these jurors, and in the absence of such evidence, the motion

to strike for cause was properly denied. Absent some evidence of bias or actual partiality, a juror is not disqualified merely because he previously sat in a similar case. *See, State v. Charlot,* 157 W.Va. 994, 206 S.E.2d 908 (1974).

■ For her last assignment of error, the defendant asserts that the trial court erred by allowing the defendant's prior statement to be used on cross-examination for impeachment purposes. The defendant had given a statement to police on the night of the murder, and during her cross-examination at trial, the prosecution used this statement to show inconsistencies between her trial testimony and the statement.

In Syllabus Point 2 of *State v. Spadafore,* 159 W.Va. 236, 220 S.E.2d 655 (1975), we stated:

> Prior out-of-court statements may be used to impeach the credibility of a witness and a prior inconsistent statement may be introduced concerning any specific matter about which the witness has testified at trial, however, where the witness does testify contrary to his prior statement but demonstrates an absence of memory, such prior statement must be used sparingly to demonstrate lack of integrity in the witness or the reason for surprise to the party which calls him, but these legitimate purposes may not be used as a ruse for introducing inadmissible evidence.

The prior statement in this case was not introduced during the State's case-in-chief, and the defendant waived any objection as to the voluntariness of the statement. The defendant testified inconsistently with her prior statement, and therefore, the impeachment was proper. We find no error.

For the foregoing reasons, the judgment of the Circuit Court of Wayne County is affirmed.

AFFIRMED.