400 S.E.2d 843

**STATE of West Virginia**

v.

**JAMES EDWARD S.**

**No. 19577.**

Supreme Court of Appeals of West Virginia.

Dec. 12, 1990.

Mark D. Nigh, Philippi, for James E.S.

Roger W. Tompkins, Atty. Gen. and Constance Tsokanis, Asst. Atty. Gen., Atty. General's Office, Charleston, for the State.

MILLER, Justice:

James Edward S.[1] was convicted by a jury in Marion County of incest in violation

---

1. Consistent with our practice in cases involving sensitive issues, we will refer to the victims by their initials. Because the victims are related to the defendant, we will refer to the defendant by his first name and last initial. *See State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990); *Benjamin R. v. Orkin Exterminating Co.,* 182 W.Va. 615, 390 S.E.2d 814 (1990); *In Re Jonathan P.,* 182 W.Va. 301, 387 S.E.2d 537 (1989); *State v. Murray,* 180 W.Va. 41, 375 S.E.2d 405 (1988).

of W.Va.Code, 61–8–12 (1986),[2] was sentenced to five-to-ten years of imprisonment, and was fined $5,000. Two principal errors are asserted on appeal. The first is that the trial court erroneously admitted hearsay evidence under Rule 803(24) of the West Virginia Rules of Evidence (W.Va.R. Evid.). The second alleged error is that the trial court refused to permit the impeachment of a State's witness by extrinsic evidence of bias.[3] We agree that reversible error was committed on the first ground.

## I.

## FACTS

In March, 1987, the defendant was indicted for incest with his fourteen-year-old daughter, T.S. Specifically, T.S. contended that the defendant had sexual intercourse with her in July, 1986. The family consisted of the defendant, his wife, their two daughters, T.S. and S.S., and four sons. In 1986, the Department of Human Services (DHS) began investigating the family situation because of observations made of the two girls at school. Eventually, in January, 1987, all of the children were removed from the home.

Prior to trial, the State filed a motion to allow Nancy Riley, a social worker employed by DHS, to testify about out-of-court statements made to her by the victim's sister, S.S. The trial court conducted an *in camera* hearing on the motion and ruled that S.S. would have to testify on her own behalf.[4] Four days prior to trial, the State renewed its motion because S.S. had allegedly run away and the State was unaware of her whereabouts. The trial court

reversed its earlier ruling and found: "[A] hearsay statement under the residual exception, West Virginia Rules of Evidence 803(24), presented by Nancy Riley, will be admissible, as the statement meets the requirements of said exception and the State has given adequate notice[.]" The defendant's objection to this ruling was preserved in the order. Defense counsel renewed his objection at trial when Ms. Riley testified about the hearsay statements of S.S.

At trial, Ms. Riley testified that S.S. told her that the defendant had sexually abused T.S. On appeal, the defendant contends that admission of this testimony violated Rule 803(24) and his constitutional rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

## II.

## THE CONFRONTATION CLAUSE

The Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him." This clause was made applicable to the states through the Fourteenth Amendment to the United States Constitution. *E.g.,* *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This provision creates a strong preference for live testimony; however, admission of reliable out-of-court statements are not categorically prohibited.

---

2. W.Va.Code, 61–8–12(b), provides, in part: "A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt."

3. The defendant also asserts that the trial court erred in permitting the State to offer the testimony of an expert witness without first producing his written report. Under Rule 26.2 of the West Virginia Rules of Criminal Procedure, statements do not have to be made available until after the witness testifies on direct examination. *See State v. Watson,* 173 W.Va. 553, 318

S.E.2d 603 (1984). Defendant also claims that the trial court did not have jurisdiction to sentence him because a motion to disqualify the presiding judge had not been ruled on. The record does not support this contention. In an order dated January 22, 1988, the trial court denied all of the defendant's post-trial motions, which included the motion to disqualify. The defendant was not sentenced until June 3, 1988, approximately six months later.

4. During the hearing, S.S. stated that she was not afraid to testify, but that she did not want to testify against her father because she did not want to betray him.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court explained the two central requirements for admission of extrajudicial testimony under the Confrontation Clause: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement.[5]

"First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. . . .

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder v. Massachusetts*, 291 U.S. [97], at 107 [54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)]." 448 U.S. at 65, 100 S.Ct. at 2538–39, 65

L.Ed.2d at 607. (Citations omitted; footnote omitted).

We have applied the Sixth Amendment right of confrontation in a number of cases, most of which addressed situations where the defendant was unable to cross-examine a witness who was present at trial. *See State v. Mullens*, 179 W.Va. 567, 371 S.E.2d 64 (1988) (accomplice took Fifth Amendment and prosecutor read his confession); *State v. Eye*, 177 W.Va. 671, 355 S.E.2d 921 (1987) (court refused to allow defendant to cross-examine a witness regarding bias). *Cf. Naum v. Halbritter*, 172 W.Va. 610, 309 S.E.2d 109 (1983) (dictum as to inability to use dead witness's testimony).

■ In several other cases, we have, without reference to the Confrontation Clause, discussed the admissibility of testimony given at a former trial or preliminary hearing where the declarant is currently unavailable to testify. *See, e.g., State v. Hall*, 174 W.Va. 787, 329 S.E.2d 860 (1985); *State v. Jacobs*, 171 W.Va. 300, 298 S.E.2d 836 (1982);[6] *State v. Goff*, 169 W.Va. 744, 289 S.E.2d 467 (1982); *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980), *overruled on other grounds, State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981); *State v. Dawson*, 129 W.Va. 279, 40 S.E.2d 306 (1946); *State v. Sauls*, 97 W.Va. 184, 124 S.E. 670 (1924).[7]

---

**5.** In *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court held that under Rule 801(d)(2)(E) of the Federal Rules of Evidence an independent inquiry into reliability is not required. Earlier, in *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Supreme Court concluded that a showing of unavailability is not necessary when the hearsay statement is an out-of-court declaration of a co-conspirator. Rule 801(d)(2)(E) statements are defined as not being hearsay if they meet the criteria stated in the rule.

**6.** In *Jacobs*, 171 W.Va. at 304, 298 S.E.2d at 841, we made this statement:

"The rule in West Virginia is that sworn testimony taken from a former trial or proceeding is admissible if there is: (1) an inability to obtain the testimony of the witness; (2) an opportunity to cross-examine the witness in the former proceeding; and (3) a substantial identity of the parties and the issues." (Citations omitted).

This rule does not completely conform with the Confrontation Clause requirements when a statement is being offered against a defendant. It is clear from *Ohio v. Roberts, supra,* that an opportunity to cross-examine the declarant will not automatically make the extrajudicial statement admissible under the Confrontation Clause. The statement must also have indicia of reliability.

**7.** In *State v. Edward Charles L., supra,* we allowed the introduction of a witness's out-of-court statement under Rule 803(24), W.Va.R. Evid.; however, the witness did testify at trial. The Confrontation Clause was mentioned, but it was not an issue, and we stated:

"It is extremely important to recognize that in the defendant's trial, each child was present, testified in court, and was cross-examined by defense counsel. Furthermore, neither the mother nor the psychologist added anything substantive to the children's testimony. It would cause us grave concern as to the propriety of the mother's testimony if the chil-

## A.

### Rule of Necessity

■ The initial showing under the Confrontation Clause of the unavailability of a witness was discussed in some detail in *Ohio v. Roberts, supra.* The Supreme Court held that in order to satisfy its burden of showing that the witness is unavailable, the State must prove that it has made a good-faith effort to obtain the witness's attendance at trial. This showing necessarily requires substantial diligence:

"The basic litmus of Sixth Amendment unavailability is established: '[A] witness is not "unavailable" for purposes of … the exception to the confrontation requirement unless the prosecutorial authorities have made a *good faith effort* to obtain his presence at trial.' *Barber v. Page*, 390 U.S., [719] at 724–725 [88 S.Ct. 1318, at 1321–1322, 20 L.Ed.2d 255 (1968)] (emphasis added). *Accord, Mancusi v. Stubbs*, [408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)]; *California v. Green*, 399 U.S., [149] at 161–162, 165, 167, n. 16 [90 S.Ct. 1930 at 1936–1937, 1939, 1940, n. 16, 26 L.Ed.2d 489 (1970)]; *Berger v. California*, 393 U.S. 314 [89 S.Ct. 540, 21 L.Ed.2d 508] (1969).

"… The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), 'good faith' demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation…. The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate." 448 U.S. at 74–75, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. (Emphasis in original; citations omitted).[8]

Other courts hold that where there is a lack of evidence in the record demonstrating the state's good-faith efforts to secure the witness for trial, the prosecution has failed to carry its burden of proving unavailability. *See also Mechler v. Procunier*, 754 F.2d 1294 (5th Cir.1985); *Ewing v. Winans*, 749 F.2d 607 (10th Cir.1984); *State v. Edwards*, 136 Ariz. 177, 665 P.2d 59 (1983); *People v. Dement*, 661 P.2d 675 (Colo.1983); *State v. Gollon*, 115 Wis.2d 592, 340 N.W.2d 912 (App.1983).

■ In this case, the record is devoid of any evidence that the State made the required good-faith effort to locate S.S. The only pertinent evidence is a brief order by the circuit court dated four days prior to trial, declaring the witness unavailable. The order does not contain any findings of fact. At trial, Ms. Riley testified that the DHS had filed several juvenile petitions against S.S. for her truancy. There is nothing in the record demonstrating what efforts the State made to locate S.S. The mother of S.S. testified at trial as a defense witness and stated that two days prior to trial, S.S. had called and stated that she was in Morgantown and that she wanted to come home.

In light of the foregoing, we find that the State failed to prove that it made a good-faith effort to locate S.S.

dren gave a barebones or sketchy account of what occurred, and then the mother was permitted to expand upon or add detail and substance to such testimony through the children's extra-judicial statements. Such was not the case here. Judge Weinstein and Professor Berger have written that '[t]he availability of the declarant at trial vitiates the main concern of the hearsay rule, which is the lack of any opportunity for the adversary to cross-examine the absent declarant.'" 183 W.Va. at 656, 398 S.E.2d at 138, *citing* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(24)[01] at 803–377 (1985). (Footnote omitted).

**8.** In *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court found that the absent witness's statement was so remote and peripheral that the use of cross-examination was negligible. In this case, the out-of-court statements attributed to S.S. cannot possibly be termed remote or peripheral, as they corroborated the sexual advances made by the defendant on T.S.

## B.

### Indicia of Reliability

In *Ohio v. Roberts, supra,* the Supreme Court surveyed its prior cases and recognized that even though the unavailability requirement has been met, the Confrontation Clause mandates the exclusion of evidence that does not bear adequate indicia of reliability. The Court recognized that reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception. It summarized:

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. (Footnote omitted).

More recently, in *Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court addressed the admissibility of extrajudicial statements under the residual hearsay exception.[9] The Supreme Court began by admonishing that merely because a hearsay exception allows the introduction of evidence, the Confrontation Clause question is not necessarily resolved:

"Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements.... The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." —— U.S. at ——, 110 S.Ct. at 3146, 111 L.Ed.2d at 651. (Citations omitted).

*Wright* then reiterated the *Roberts* reliability test, which emphasized the necessity of particularized guarantees of trustworthiness unless the out-of-court statement fell within one of the longstanding hearsay exceptions:

" 'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' [*Ohio v. Roberts,* 448 U.S.] at 66 [100 S.Ct. 2531 at 2539, 65 L.Ed.2d 597] (footnote omitted); *see also Mancusi v. Stubbs,* 408 U.S. 204, 213 [92 S.Ct. 2308, 2313, 33 L.Ed.2d 293] (1972)." —— U.S. at ——, 110 S.Ct. at 3146, 111 L.Ed.2d at 652.

As to what constitutes a particularized guarantee of trustworthiness, the Court stated that this proof must come from the "totality of the circumstances," but these circumstances "include only those that surround the making of the statement and

---

**9.** The residual hearsay exception is contained in W.Va.R.Evid. 803(24) and 804(b)(5). These rules are virtually identical to each other and to their counterparts in the Federal Rules of Evidence, and state:

"Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

The only difference between the two rules is that under Rule 804(b)(5), the witness must be unavailable as defined in Rule 804(a). This "unavailability" definition may not be congruent to the Confrontation Clause's unavailability standard.

that render the declarant particularly worthy of belief." —— U.S. at ——, 110 S.Ct. at 3148, 111 L.Ed.2d at 655. It went on to point out that the trustworthiness of the out-of-court statement must be so apparent from the relevant circumstances that "cross-examination would be of marginal utility." —— U.S. at ——, 110 S.Ct. at 3149, 111 L.Ed.2d at 655. If these very stringent conditions are met, then the statement has sufficient indicia of reliability to be admitted.

■ Finally, *Wright* decided that in making this trustworthiness inquiry, a court could not look to corroborating evidence that might support the statement:

"In short, the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." —— U.S. at ——, 110 S.Ct. at 3150, 111 L.Ed.2d at 657.[10]

In short, *Wright,* in speaking of the Confrontation Clause requirements, regards evidence offered under the residual hearsay exceptions contained in Rule 803(24) and Rule 804(b)(5) as presumptively unreliable because it does not fall within any firmly rooted hearsay exception, and, therefore, such evidence is not admissible. If, however, a specific showing of particularized guarantees of trustworthiness can be made, the statements may be admissible.

In this regard, corroborating evidence may not be considered, and it must be found that the declarant's truthfulness is so clear that cross-examination would be of marginal utility.

Most courts that have confronted whether evidence should be admitted under a residual hearsay exception have recognized that the trial court, as a preliminary matter, must determine whether the criteria identified in the residual rule have been met.[11] *See United States v. Bailey,* 581 F.2d 341 (3d Cir.1978); *Piva v. Xerox Corp.,* 654 F.2d 591 (9th Cir.1981); *State v. Turner,* 345 N.W.2d 552 (Iowa App.1983); *Cummins v. State,* 515 So.2d 869 (Miss. 1987); *State v. Smith,* 315 N.C. 76, 337 S.E.2d 833 (1985).

■ In a criminal case, the Confrontation Clause commands the trial court to pursue the *Wright* trustworthiness inquiry. In assessing whether a statement is reliable, the trial court must make a record to support its decision on admissibility. Where no such record is made, the reliability test has not been satisfied. *See United States v. Popenas,* 780 F.2d 545 (6th Cir. 1985); *State v. Horsley,* 117 Idaho 920, 792 P.2d 945 (1990); *State v. Brown,* 341 N.W.2d 10 (Iowa 1983); *State v. Carver,* 380 N.W.2d 821 (Minn.App.1986); *Cummins v. State, supra; State v. Smith,* 315 N.C. 76, 337 S.E.2d 833 (1985); *State v. Nelson,* 777 P.2d 479 (Utah 1989). *See generally* 4 J. Weinstein & M. Berger, *Weinstein on Evidence* ¶ 803(24)[01] at 803–373 (1990).

In the present case, there is no record regarding the reliability issue. Such a record should be made prior to the time the

---

**10.** It was this point that inspired the dissent in *Wright,* which felt that corroborating evidence should be considered.

**11.** We summarized these factors in Syllabus Point 5 of *State v. Smith,* 178 W.Va. 104, 358 S.E.2d 188 (1987):

"The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthi-

ness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence."

witness is permitted to testify concerning the absent witness's out-of-court statements. Here, the trial court's initial finding that S.S. was able to testify sheds no light on the underlying trustworthiness of her statements to Ms. Riley. Because the State failed to make a record to sustain its burden of proof on both the unavailability and the reliability issues, as required under the Confrontation Clause, this case must be reversed.

## III.

### BIAS

The defendant claims that the trial court erred in refusing to allow him to show by extrinsic evidence that the State's chief witness, Ms. Riley, was biased against him after she denied any animosity on cross-examination.

■ In Syllabus Point 5 of *State v. Jones*, 161 W.Va. 55, 239 S.E.2d 763 (1977), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980), we recognized that bias can bear upon the credibility of a witness:

"A witness may be cross-examined regarding bias, prejudice or expected favor or any other fact which might affect his credibility."

The term "bias" was defined in *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct.

465, 469, 83 L.Ed.2d 450, 457 (1984), and the Supreme Court recognized the continuing admissibility of bias under the Federal Rules of Evidence:

"Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest."

The *Abel* Court had difficulty determining under which of the Federal Rules of Evidence bias falls, but concluded that the drafters of the rules did not intend "to scuttle entirely the evidentiary availability of cross-examination for bias." 469 U.S. at 50, 105 S.Ct. at 468, 83 L.Ed.2d at 456. Most courts treat bias as we do, as a means of impeaching a witness's credibility.[12] It is logical, therefore, to fit "bias" into Rule 607 of the Rules of Evidence permitting impeachment of the credibility of a witness.[13] We also recognized, as have other courts, that the trial court has discretion in admitting bias testimony[14] under Rule 401 as to relevancy and Rule 403 as to prejudice.[15] However, we emphasize that evidence of bias is almost always relevant.[16]

■ The pivotal question in this case is whether the defendant was entitled to call

---

**12.** *E.g., State v. Vickers*, 159 Ariz. 532, 768 P.2d 1177 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990); *People v. Trujillo*, 749 P.2d 441 (Colo.App.1987); *Scull v. United States*, 564 A.2d 1161 (D.C.App.1989); *People v. Foskey*, 136 Ill.2d 66, 143 Ill.Dec. 257, 554 N.E.2d 192 (1990); *Hunt v. Regents of Univ. of Minn.*, 446 N.W.2d 400 (Minn.App.1989), *rev'd on other grounds*, 460 N.W.2d 28 (Minn.1990); *Braden v. Hendricks*, 695 P.2d 1343 (Okla.1985); *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied*, — U.S. —, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990); *State v. Wiegers*, 373 N.W.2d 1 (S.D.1985); *Bynum v. State*, 731 S.W.2d 661 (Tex.App.1987); *Loomer v. State*, 768 P.2d 1042 (Wyo.1989).

**13.** W.Va.R.Evid. 607 states: "The credibility of a witness may be attacked and impeached by any party, including the party calling him."

**14.** *United States v. Abel, supra; State v. Vickers, supra; People v. Trujillo, supra; State v. Isaacson*, 129 N.H. 438, 529 A.2d 923 (1987); *Bynum*

*v. State, supra; State v. Hackford*, 737 P.2d 200 (Utah 1987); *Loomer v. State, supra.*

**15.** W.Va.R.Evid. 401 states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.Va.R.Evid. 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**16.** *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *People v. Foskey, supra; Scull v. United States, supra; Commonwealth v. Abu–Jamal, supra; State v. Hackford, supra*; 3A J. Wigmore, *Evidence* § 940 at 775 (Chadbourn rev. 1970).

his brother as a witness to impeach Ms. Riley, who denied any bias toward the defendant. During cross-examination, the defendant asked Ms. Riley whether she wanted the defendant arrested as a child molester and whether she was upset when he was released from jail on bond.[17]

■ Because bias evidence is essentially an attack on the credibility of the witness, if the witness has denied any bias, and it is desired to rebut this by the witness's prior inconsistent statement showing bias, such extrinsic evidence is proper. In *United States v. Frankenthal,* 582 F.2d 1102, 1106 (7th Cir.1978), the Seventh Circuit explained: "Because of the importance of evidence of bias or interest, inquiry into the area is never collateral, and a witness' denial of the facts constituting bias or interest may be rebutted with extrinsic evidence." (Citations omitted). *E.g., United States v. Gambler,* 662 F.2d 834 (D.C.Cir.1981); *United States v. DiNapoli,* 557 F.2d 962 (2d Cir.), *cert. denied,* 434 U.S. 858, 98 S.Ct. 181, 54 L.Ed.2d 130 (1977); *United States v. Leslie,* 759 F.2d 366 (5th Cir. 1985), *vacated on other grounds,* 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987); *Lewy v. Southern Pac. Trans. Co.,* 799 F.2d 1281 (9th Cir.1986). *See State v. Holmes,* 177 W.Va. 236, 351 S.E.2d 422 (1986).

The Fifth Circuit in *United States v. Lay,* 644 F.2d 1087 (5th Cir.), *cert. denied,* 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981), explicitly concluded that the requirements of Rule 613(b)[18] apply to cases where a defendant seeks to introduce extrinsic evidence of bias to impeach a witness's trial testimony. The Court of Appeals subsequently developed three criteria that must be met before evidence of a witness's prior statement can be admitted to contradict the denial of bias:

"(1) [The statement] must be a prior inconsistent statement of the witness;

"(2) The witness must be afforded an opportunity to explain or deny [having made] the statement; and

"(3) The opposing party must be afforded an opportunity to interrogate the witness concerning the statement." *United States v. Leslie,* 759 F.2d at 379. (Citations omitted).

*E.g., United States v. Harvey,* 547 F.2d 720 (2d Cir.1976). Several courts, without citing Rule 613(b), have held that when a party offers extrinsic evidence of a prior statement demonstrating bias, a witness must be provided an opportunity to explain the circumstances suggesting bias. *United States v. Marzano,* 537 F.2d 257 (7th Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *People v. Ward,* 153 Ill.App.3d 413, 106 Ill.Dec. 460, 505 N.E.2d 1251, *cert. denied,* 116 Ill.2d 573, 113 Ill.Dec. 315, 515 N.E.2d 124 (1987).

---

**17.** The relevant cross-examination was as follows:

"Q Mrs. Riley, on the 5th of February there was a hearing before Division I in Circuit Court in Marion County; you indicated that earlier a warrant had already been issued for Mr. [S.]; was there not?
"A Yes, I think there had been.
"Q Where Mr. [S.] was waiting to go to court on another matter, you wanted him arrested?
"A That wasn't my decision.
"Q Didn't you tell the trooper—Mr. [S.] was in the room off to the side—he was a child molester and you wanted him charged by him and jailed because he didn't have enough money to get out?
"A No, sir.
"Q You did not make that statement?
"A No, sir.
"Q After he was released and posted bond, you will testify you were not upset he posted bond?

"A I was not upset.
"Q You weren't upset at all?
"A For the girls, because they were frightened.
"Q You weren't upset that he could make bond?
"A No."

**18.** Fed.R.Evid. 613(b) is the same as our Rule 613(b) and provides:

"*Extrinsic Evidence of Prior Inconsistent Statement of Witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible *unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon,* or the interests ·of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2)." (Emphasis added).

*See generally* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 607(03), 607(54) (1976 & Supp.1990).

 We have utilized Rule 613(b) in other cases where an impeachment of a witness is sought by a prior inconsistent statement. *State v. Schoolcraft,* 183 W.Va. 574, 396 S.E.2d 760 (1990); *State v. King,* 183 W.Va. 440, 396 S.E.2d 402 (1990); *State v. Holmes,* 177 W.Va. 236, 351 S.E.2d 422 (1986). Accordingly, we hold that the requirements of Rule 613(b) of the West Virginia Rules of Evidence apply in cases where a criminal defendant seeks to introduce extrinsic evidence of a witness's bias. Three criteria must be met before evidence of a witness's prior statement can be admitted to contradict the denial of bias:

(1) The statement must be a prior inconsistent statement of the witness; (2) The witness must be afforded an opportunity to explain or deny having made the statement; and (3) The opposing party must be afforded an opportunity to interrogate the witness concerning the statement.

Here, the witness was never accorded a right during cross-examination to be asked about her supposed bias. Moreover, it is unclear from the vouch of the record made by defense counsel whether the defendant's brother would testify that there was a prior inconsistent statement on the part of Ms. Riley showing bias against the defendant.[19]

 For these reasons, we cannot say that the trial court abused its discretion in refusing this evidence.[20]

19. Specifically, counsel vouched the record as follows:

"MR. HINTON: Yesterday in cross-examination Nancy Riley indicated she did not make certain statements and Mr. [S.] is prepared to testify to the statements she, in fact, did make. Part of the defense that counsel has indicated to the jury is that the Welfare Department, and particularly Nancy Riley, has had a vengeful attitude toward the defendant James [S.] and, in fact, she has taken the interview of [T.S.] and [S.S.] and stretched it and come up with different things in her report than Trooper Stalnaker had. I think it's important to show the credibility of the

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Circuit Court of Marion County.

Reversed.

witness, Nancy Riley, as well as her vengefulness."

20. The defendant also argues that the trial court erred in refusing to allow the defendant's brother to testify about the victim recanting that her father sexually abused her. Prior to the brother's testimony, the defendant's wife, his sister-in-law, and the victim testified about the inconsistencies in T.S.'s story and her denial of the assault. Such evidence was properly excluded because it was cumulative. *State v. Brown,* 179 W.Va. 681, 371 S.E.2d 609 (1988); *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983); W.Va.R.Evid. 403.