298 S.E.2d 836

**STATE of West Virginia**

v.

**Howard Dale JACOBS.  (Two cases)**

**Nos. 15270, 15269.**

Supreme Court of Appeals of
West Virginia.

Dec. 10, 1982.

**302**

Janet F. Steele, Asst. Atty. Gen., Charleston, for respondent.

Clark B. Frame, Wilson, Frame & Poling, Morgantown, for petitioner.

## PER CURIAM:

Howard Dale Jacobs brings an appeal and an original proceeding in habeas corpus to challenge a final judgment of the Circuit Court of Doddridge County which sentenced him to imprisonment in the penitentiary for a term of not less than one nor more than ten years upon his conviction by jury verdict of the crime of entering without breaking with intent to commit larceny of an antique pump organ. In his appeal Jacobs alleges erroneous evidentiary rulings by the trial court and prosecutorial misconduct. The habeas corpus proceeding was instituted on grounds of ineffective assistance of counsel. We find no merit in the appellant-petitioner's assertions. We therefore affirm his conviction and deny the writ of habeas corpus prayed for.

On January 28, 1980, an indictment was returned against the appellant-petitioner charging him with entering without breaking a storehouse of one Jerry Lee Myer with the intent to steal an antique pump organ valued at $1,000. This indictment was one of several returned against the appellant-petitioner in connection with a series of breaking and enterings which had occurred in Doddridge County in 1978. In July 1979, the appellant-petitioner was tried on similar charges involving the theft of a corner cabinet from a building owned by Jerry Lee Myer and was acquitted by a jury.[1] A *nolle prosequi* order was entered in November 1979 in connection with previous indictments charging the appellant-petitioner with breaking and entering in connection with the larceny of the pump organ.

The appellant-petitioner's trial on the entering without breaking charge was set for April 14, 1980. Pursuant to discovery motions made by the defense, the prosecuting attorney filed a statement of disclosure on February 11, 1980. On April 21, 1980, defense counsel filed a motion to quash the indictment on the ground that the prosecuting attorney had willfully failed to disclose exculpatory evidence in the form of a letter written by the State's chief witness, Mark Bell, to the prosecutor. After a hearing, the circuit court overruled the motion to quash.

On April 30, 1980, the appellant-petitioner was found guilty of the charges contained in the indictment. A motion to set aside the verdict was denied by order entered May 28, 1980, and an order of conviction and sentencing was entered July 3, 1980. On February 26, 1981, the appellant-petitioner filed with this Court a petition for appeal which was subsequently denied. The petition for a writ of habeas corpus was filed on April 30, 1981. On June 24, 1981, a rule to show cause was issued by this Court and upon reconsideration we agreed to hear the appellant-petitioner's appeal.

## I.

We will first address the issues raised by Jacobs in his appeal. The first and most serious of his assignments of error is that the prosecuting attorney suppressed exculpatory evidence in the form of a letter written by Mark Bell prior to trial. Bell, who is the nephew of the appellant-petitioner, had entered into a plea bargain arrangement with the prosecuting attorney whereby he agreed to plead guilty to one charge of breaking and entering and to testify against the appellant-petitioner and others allegedly involved in the breaking and enterings in exchange for which the prosecut-

---

**1.** Although the appellant-petitioner asserts that the previous trial was for the same offense for which he was later convicted and resulted in a hung jury, the record does not support these assertions.

ing attorney agreed to dismiss other indictments pending against Bell.

In his motion to quash, the appellant-petitioner contended that the letter Bell had written to the prosecuting attorney some weeks before the trial indicated that Bell had been coerced by the State into testifying against the appellant-petitioner against his will. Defense counsel asserted that the prosecuting attorney refused to discuss the contents of the letter and told him that the letter had been lost. At the hearing, the prosecuting attorney asserted that the letter had been misplaced and that, in any event, it did not contain exculpatory evidence. Prior to trial, the prosecuting attorney found the misplaced letter and sent a copy of it to defense counsel.

The text of the letter which was written while Bell was in prison indicates that Bell had changed his mind about testifying against the appellant-petitioner.[2] Bell's testimony at trial indicates that he wrote the letter to the prosecutor because he thought he would be tried on other charges even if he testified against the appellant-petitioner. He apparently agreed to testify after having been reassured by the prosecuting attorney that the other charges against him would be dismissed pursuant to the plea bargain agreement. In his deposition, the prosecuting attorney stated that when he received the letter he assumed that Bell was under pressure from his family not to testify against his uncle.

The record also shows that even though the prosecuting attorney did not believe the letter to contain exculpatory evidence which he was required to disclose to the defense, he mailed a copy of the letter to defense counsel prior to trial. Defense counsel agreed, after reading the letter, that it was of little value to the appellant-petitioner's defense. The appellant-petitioner raises a question, however, as to the authenticity of this letter. He asserts that it was not written on the typical paper used by inmates at Huttonsville and raises the specter that the letter in the record was written by Bell sometime afterward, at the prosecutor's behest in order to satisfy defense counsel. At trial, however, Bell identified the letter as the one he had written from Huttonsville and other letters from Bell which appear in the record appear to have been written on the same type of paper.

We have in the past recognized the distinction between the prosecutor's constitutionally mandated duty to disclose exculpatory material to the defendant in the absence of discovery motions and the requirement to respond to discovery requests with relevant information. *See State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982); *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979). In the present case, we do not need to address this issue since the State did give the defense the letter before trial.

We find nothing in the evidence below to indicate that the prosecutor acted improperly in not including Bell's letter in the statement of disclosure. Bell did not recant his testimony in the letter or on the stand, and it appears that his reasons for deciding against testifying were not related to any coercive tactics on the part of the State.[3] In any event, defense counsel was

---

2. The handwritten letter read as follows:

> Mr. Sammons,
>     I'm not coming back down there to testify. So you can go ahead and bring those other charges up against me. I found out a few things about what you're doing down there. Either way I go I'm still going to get more time. You know that the judge could have gave me probation. I could have had a new start. I've been locked up for exactly 1 year and 3 months. Well write back or call me and let me know what you think.
>
>                                        Mark Bell

3. Attached to the appellant-petitioner's petition for a writ of habeas corpus is a letter written by

Bell to the appellant-petitioner's wife almost one year after trial in which Bell states that he lied to the prosecuting attorney about the appellant-petitioner's involvement in the crime because the prosecutor told him he could be sentenced to life imprisonment if he didn't testify. This statement, which is unsworn and is dated after this Court originally refused the appellant-petitioner's appeal and before the petition for a writ of habeas corpus was filed, not only contradicts Bell's prior testimony and the prosecuting attorney's statement, but is also contrary to the statement Bell gave to the state police in October 1978 which originally implicated the appellant-petitioner in the crime. That statement, which was given some three months before the plea

supplied with a copy of the letter prior to trial and agreed, after having read it, that it was of no value to the appellant-petitioner's defense.[4]

The appellant-petitioner next argues that the trial court erred when it refused admission of a portion of a transcript of testimony given by David Hickman, a defense witness at the appellant-petitioner's former trial involving the theft of the corner cabinet.[5] The appellant-petitioner sought to admit the transcript in order to impeach the credibility of the State's witness Mark Bell. The trial court refused admission of the transcript on the grounds that no prompt effort had been made by defense counsel to secure Hickman's attendance at trial and that Hickman's testimony was irrelevant to the issues surrounding the theft of the pump organ.

The rule in West Virginia is that sworn testimony taken from a former trial or proceeding is admissible if there is: (1) an inability to obtain the testimony of the witness; (2) an opportunity to cross-examine the witness in the former proceeding; and (3) a substantial identity of the parties and the issues. *State v. Goff,* 169 W.Va. 744, 289 S.E.2d 467 (1982); *State v. R.H.,* 166 W.Va. 280, 273 S.E.2d 578 (1980); *State v. Dawson,* 129 W.Va. 279, 40 S.E.2d 306 (1946); *State v. Sauls,* 97 W.Va. 184, 124 S.E. 670 (1924).

We find that the trial court correctly ruled that the transcript was inadmissible below because no effort had been made by the defense to secure Hickman's attendance at trial. The record indicates that for some time prior to trial Hickman was residing in Louisiana. Six or seven weeks prior to trial defense counsel asked the appel-

lant-petitioner to check that there was no problem with Hickman's attendance. At that time Hickman indicated that he would voluntarily return to West Virginia and testify on behalf of the appellant. Nevertheless, the appellant-petitioner advised his attorney that he should proceed with the issuance of a summons in Louisiana.

However, defense counsel failed to invoke our statutory procedure for the summoning of witnesses in another state. *See* W.Va.Code § 62–6A–3 (1977 Replacement Vol.). From the record it appears that defense counsel was motivated by three factors in reaching this decision. First, he believed that the issuance of a summons in Louisiana would have caused a delay in the appellant-petitioner's trial. Second, he feared that summoning Hickman involuntarily would antagonize the witness. Third, and more important, defense counsel did not want to risk cross-examination of Hickman which might implicate his client in other criminal transactions. Indeed, it appears that originally defense counsel did not intend to call Hickman as a witness for fear of prejudicing his client. Thus, it is understandable that when two or three weeks prior to trial Hickman ceased communicating with counsel, no effort was made to secure his attendance, save the issuance of a subpoena in Doddridge County.

In syllabus points four and five of *State v. Sauls, supra,* this Court held:

4. Where defendant has been once tried upon a criminal charge, and subsequent to such trial a witness who testified in defendant's behalf disappears

---

bargain agreement was entered, is consistent with Bell's testimony at trial.

**4.** The appellant-petitioner also complains that the prosecutor failed to disclose the fact that a search had been conducted of a house during the time when the pump organ was allegedly taken there. We find no impropriety in the actions of the prosecutor in this regard. This search was made in connection with a separate offense involving a different defendant than the appellant-petitioner. Moreover, the search occurred prior to the time when the appellant-petitioner was implicated in the theft of the pump organ. Thus the organ was not the object of the

search and there was no report that an organ was or was not found in the house.

**5.** We do not address Jacobs' contention that the court erred in not permitting defense counsel to read to the jury a transcript from the former trial containing an inconsistent statement by State's witness Bell, since this point is not assigned as error in the petition for appeal, nor argued in the appellant-petitioner's brief. *See State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982). Moreover, it appears from the record that defense counsel was given the opportunity to impeach Bell by use of the inconsistent statement.

through no fault of defendant, and, although diligently sought by defendant, cannot be found so as to testify at a later trial of defendant upon the same charge, the testimony of such witness given at the former trial is properly admissible.

5. Such evidence is not admissible, however, unless it be shown that defendant has not been able to find the witness after diligent search; the mere issuance of subpoenas and placing them in the hands of the sheriff or other officer to be served, as shown in the instant case, is insufficient proof of diligence in that behalf.

We believe the same requirement of due diligence is applicable in the circumstances presented by this case. Certainly, the issuance of a subpoena in Doddridge County cannot be considered due diligence when defense counsel knew of the location of the witness in Louisiana, and primarily as a matter of tactics, chose not to invoke the statutory procedure for summoning out-of-state witnesses. Accordingly, we find no error in the trial court's refusal to admit the transcript of Hickman's former testimony.

■ In the final assignment of error raised in his appeal, Jacobs argues that the trial court erred when it failed to submit to the jury the issue of whether the building from which the pump organ was removed was a "storehouse" within the meaning of W.Va.Code § 61–3–12 (1977 Replacement Vol.).[6] Apparently, the appellant-petitioner contends that the house was an abandoned building and therefore not within the purview of the statute. We find no merit in this contention. The testimony below indicates that although the house had been vacant for several years, it was being used to store furniture. The windows were nailed shut and the front door was locked with a padlock. Mr. Myer visited the house

approximately once a week. Moreover, the jury was instructed that the State was required to prove beyond a reasonable doubt the appellant-petitioner did enter without breaking "the storehouse" of Mr. Myer. Thus, the issue of whether the building was a "storehouse" was submitted to the jury.

■ The appellant-petitioner further argues that error was committed below because the State failed to prove who owned the pump organ or to produce competent evidence of its value. This argument is without merit. It is clear from the testimony below that Mr. Myer possessed an undivided interest in the storehouse and that his duties included the care, custody, and control of its contents. Ownership of property mentioned in an indictment for the offense proscribed by W.Va.Code § 61–3–12 may properly be laid in one having possession of the property. *See State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919). Moreover, in a prosecution under W.Va. Code § 61–3–12 the value of the property is not a critical determination, since the statute proscribes entering without breaking "with intent to commit a felony *or any larceny* ...." (emphasis added). *Cf. State v. Richardson,* 8 N.C.App. 298, 174 S.E.2d 77 (1970) (value of property involved is immaterial to conviction for felonious breaking and entering); *see also State v. Belcher,* 121 W.Va. 170, 2 S.E.2d 257 (1939) (it is not necessary in an indictment under W.Va.Code § 61–3–12 that the larceny be described with the same technical accuracy as in an indictment for larceny). In any event, Mr. Myer did testify below that the value of the pump organ was $1000. Owner testimony is generally competent to establish the value of stolen property. *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982); *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976). *See also Rodriquez*

**6.** W.Va.Code § 61–3–12 provides, in pertinent part:

   If any person shall, at any time, break and enter, or shall enter without breaking, any office, shop, storehouse, warehouse, banking house, or any house or building, other than a dwelling house or outhouse adjoining thereto or occupied therewith, or any railroad or trac-

tion car, propelled by steam, electricity or otherwise, or any steamboat or other boat or vessel, within the jurisdiction of any county in this State, with intent to commit a felony or any larceny, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years.

*v. People,* 168 Colo. 190, 450 P.2d 645 (1969); *Saunders v. U. S.,* 317 A.2d 867 (D.C.App.1974); *State v. Matzker,* 500 S.W.2d 54 (Mo.App.1973).

## II.

We now address the ineffective assistance of counsel claim raised by Jacobs in his petition for a writ of habeas corpus. Our general rule regarding a claim of ineffective assistance of counsel is set out in syllabus point 19 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

We further recognized in *Thomas* that the burden is on the defendant to prove ineffective assistance by a preponderance of the evidence.

The appellant-petitioner bases his claim of ineffective assistance on the failure of his counsel to interview four witnesses whose testimony would have been beneficial to his defense. This same ground for relief was raised in *Carrico v. Griffith,* 165 W.Va. 812, 272 S.E.2d 235 (1980), where, in analyzing the issue, this Court noted the following finding of *Carter v. Bordenkircher,* 159 W.Va. 717, 226 S.E.2d 711 (1976):

"[R]epresentation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or arrange for their attendance." However this Court takes notice that in the practice of criminal law it is not always possible for a lawyer to investigate every avenue suggested to him by his client. A lawyer must use his own skill and judgment to determine what evidence is relevant and what facts will materially aid his client in demonstrating innocence.

272 S.E.2d at 238 (*quoting Moore v. United States,* 432 F.2d 730, 739 (3d Cir.1970)).

It appears from the record that of the four witnesses whom the appellant-petitioner claims his counsel failed to interview, three were interviewed by defense counsel in connection with the appellant-petitioner's first trial. Counsel did not interview the fourth witness, but knew the substance of the witness's potential testimony from other sources. For various reasons, involving both trial strategy and the nature of the relationship between the individual witnesses and Jacobs, counsel believed that further investigation regarding these witnesses was unnecessary.

In syllabus point 21 of *State v. Thomas, supra,* we held:

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable course of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

From the record before this Court we cannot conclude that no reasonably qualified defense attorney would have acted in the same manner as defense counsel in this case. Accordingly, we find that the appellant-petitioner's claim of ineffective assistance of counsel is without merit.

For the foregoing reasons the judgment of the Circuit Court of Doddridge County is affirmed, and the writ of habeas corpus is denied.

No. 15270—Affirmed.

No. 15269—Writ denied.