417 S.E.2d 124

**STATE of West Virginia, Appellee,**

v.

**Glenn George PHILLIPS, Defendant Below, Appellant.**

**No. 20173.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided April 29, 1992.

Joanna I. Tabit, Deputy Atty. Gen., Michael J. Basile, Asst. Atty. Gen., Charleston, for appellee, State of W.Va.

Walter A. Angelini, Angelini & Angelini, Weirton, for appellant.

**PER CURIAM:**

This is an appeal by Glenn G. Phillips from a June 6, 1990, order of the Circuit Court of Hancock County, West Virginia, adjudging him guilty, after a jury trial, of transporting alcoholic liquor into a jail. The appellant raises several assignments of error allegedly committed by the lower court and contends that he is entitled to a new trial. Based specifically upon one of the assigned errors, we reverse and remand this matter for a new trial.

### I.

On September 12, 1989, a grand jury returned an indictment charging the appellant with transporting alcoholic liquor into a jail. The indictment charged that the petitioner had, on April 22, 1989, brought the liquor into the Hancock County Jail while he was on work-release during a four-month jail sentence. He allegedly brought two pint-size bottles into the jail when he returned from work release, in violation of W.Va.Code § 61–5–8(c) (1989).[1]

---

1. West Virginia Code § 61–5–8(c) provides as follows:

   If any person transports any alcoholic liquor, nonintoxicating beer, poison, explo- sives, firearm or other dangerous or deadly weapon or any controlled substance as de- fined by chapter sixty-a [§ 60A–1–101 et seq.] of this code onto the grounds of any jail or

During the discovery process, the appellant learned that one of the state's critical witnesses was Mr. Terry J. Crago. Mr. Crago would allegedly testify that he had purchased the liquor in question, that he was working with the appellant at the same work site, and that the liquor had disappeared from the work site on April 22, 1989.

At trial, however, the state explained that it had attempted to serve process upon Mr. Crago, that he could not be located, and that he could therefore be characterized as "unavailable" for purposes of West Virginia Rule of Evidence 804(a)(5).[2] The attempt to locate Mr. Crago had allegedly consisted of issuing a subpoena and indicating that Mr. Crago could be located on the "Walker farm" where Mr. Crago had allegedly conducted prior business. The prosecution also had knowledge, however, that Mr. Crago could possibly be in Oil City, Pennsylvania. Yet the prosecution made no attempt to locate Mr. Crago in that city.[3] Apparently accepting the prosecution's explanation that Mr. Crago was unavailable, the lower court permitted Deputy Mike White to present oral testimony regarding the information obtained from Mr. Crago. The appellant was thereafter found guilty and sentenced to one-to-five years in the state penitentiary by final order dated June 6, 1990.

On appeal, the appellant contends that the lower court erred by (1) permitting state's witness Deputy Mike White to testify regarding hearsay statements allegedly made to him by Mr. Terry J. Crago who was thereafter adjudged unavailable for trial; (2) denying the appellant's request for additional time in which to procure an expert witness with regard to a hair sample; (3) denying the admission of log entries indicating that Mr. Terry Crago had been brought to the Hancock County Jail for processing for an assault and battery charge on March 17, 1989; (4) refusing to grant a limiting instruction regarding a log entry exhibit introduced by the appellant which contained a possible inculpatory statement of the appellant; and (5) permitting the state, through the assistant prosecutor, to make a statement in closing argument known to be false and unsupported by the evidence.

We find the appellant's first assignment of error meritorious and reverse this matter on the basis of that error. We find no merit to the remaining assignments and do not address them further.

## II.

Regarding the characterization of Deputy White's testimony, the state first advances the proposition that the testimony

---

prison, or juvenile facility or detention center within this state and is unauthorized by law to do so, or is unauthorized by the administration of said jail or prison, or juvenile facility or detention center, such person is guilty of a felony, and, upon conviction thereof, shall be fined not less than one thousand nor more than five thousand dollars or imprisoned in the penitentiary not less than one year nor more than five years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

**2.** Rule 804(a)(5) provides as follows:

Hearsay Exceptions; Declarant Unavailable.

(a) *Definition of Unavailability.*—"Unavailability as a witness" includes situations in which the declarant—(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or

testimony) by process or other reasonable means.

**3.** The lower court addressed the issue of unavailability in the absence of the jury and questioned Assistant Prosecutor George P. Bohach regarding the attempts made to secure the testimony of Mr. Crago. Mr. Bohach explained that Mr. Crago had not been served with a subpoena because he could not be located and that the state proposed to introduce Mr. Crago's statement through the oral testimony of Deputy Mike White, the officer who had interviewed Mr. Crago. Mr. Bohach summarized the testimony to be presented and explained that "the obvious thing is we attempted to have a subpoena served on him [Mr. Crago], it was not and I don't know why." Mr. Bohach further explained that "Deputy White told me that he moved to Pennsylvania and supposedly was to advise the State of his address. He has never done that. However, there is some reason to believe that he can be reached locally and that's what is being attempted even as we speak."

was not hearsay. Second, the state contends that even if the testimony could be considered hearsay, it is admissible because the declarant, Mr. Crago, was unavailable. With regard to the first proposition, the prosecution submits that the testimony introduced at trial through Deputy White, which reflected Mr. Crago's earlier statements, was not hearsay because Mr. Crago's statements were not offered to prove the truth of the matter asserted. Rather, the prosecution contends that the statements were offered simply for the purpose of establishing that Mr. Crago had made the statements. We agree with the conclusion of the appellant, however, that the statements were indeed hearsay. The precise statements of Deputy White which are now alleged to be hearsay are as follows:

Q: Now, a few days after April 22nd, 1989, you interviewed Mr. Crago; is that correct?

A: Yes, sir.

Q: And at that time with regard to Mr. Phillips, did he indicate where Mr. Phillips was working on April 22nd?

A: Yes, he did.

Q: And what did he say?

A: There at the barn on the Walker Farm.

Q: And did Mr. Crago admit or deny that he purchased the two bottles of grain alcohol at the Chester Liquor Store?

A: He admitted that he had purchased them, yes.

Q: And did he tell you what he did with them?

A: Yes, he did.

Q: Would you tell us what he told you?

A: He not only told me but he showed me that he placed one in a toolbox in the upper part of the barn, then he placed a second one in a wooden cupboard in the downstairs area of the barn.

Q: And where was this barn located?

A: On the Walker Farm.

Q: Did he tell you what became of those two bottles?

A: At that time, he stated they were missing.

The exchange quoted above indicates that the appellant and Mr. Crago were working at the same site, that Mr. Crago purchased the two bottles of alcohol in question, that he placed them in certain locations at the work site, and that the bottles thereafter disappeared. This testimony established those overt facts and also explained the means by which the appellant was in a position where he would possibly have had access to the two bottles in question. The testimony thus provided a fundamental link between the bottles and the appellant.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va.R.Evid. 801(c). "Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules." Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990).

■ Based primarily upon the fact that the statement originally given by Mr. Crago provided the link between the appellant and the alcohol and also provided a possible explanation of the events in question, we are not convinced by the prosecution's argument that Mr. Crago's statement was not introduced to prove the truth of the matter asserted. We find that the Crago testimony was introduced to prove the truth of the matter asserted and therefore constitutes hearsay.

III.

Even if classified as hearsay, the statements could nonetheless have been intro-

duced if the declarant had truly been "unavailable" as alleged by the prosecution. In *State v. Jacobs*, 171 W.Va. 300, 298 S.E.2d 836 (1982), we enunciated a "due diligence" rule to be employed in cases wherein the alleged "unavailability" of a witness is contested. In *Jacobs*, only a cursory attempt was made to procure a witness for trial, and the prior statement of the witness was offered based upon the witness' unavailability.[4] In discussing the necessity for "due diligence" in attempting to locate a witness, we explained the following:

> Certainly, the issuance of a subpoena in Doddridge County [West Virginia] cannot be considered due diligence when defense counsel knew of the location of the witness in Louisiana, and primarily as a matter of tactics chose not to invoke the statutory procedure for summoning out-of-state witnesses.

*Id.*, 171 W.Va. at 305, 298 S.E.2d at 841.

■ Similarly, in *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), we referenced the United States Supreme Court's holding in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and explained that "[i]n order to satisfy its burden of showing that the witness is unavailable, the State must prove that it has made a good-faith effort to obtain the witness's attendance at trial. The showing necessarily requires substantial diligence." *Id.* at Syl. Pt. 3. Furthermore, in syllabus point 4 of *James Edward S.*, we explained: "Where there is a lack of

evidence in the record demonstrating the State's good-faith efforts to secure the witness for trial, the prosecution has failed to carry its burden of proving unavailability." 184 W.Va. at 410, 400 S.E.2d at 845.

■ As referenced above, the prosecution in the present case attempted to locate Mr. Crago at the "Walker farm," but also had knowledge that Mr. Crago was possibly residing in Oil City, Pennsylvania. Specifically, Deputy Mike White explained during grand jury proceedings that he had ascertained the location of Mr. Crago's residence. Deputy White stated that he had spoken to Mr. Crago and had been advised by Mr. Crago that he was living and working in Oil City, Pennsylvania. That same place of residence was also identified in the prosecution's discovery reply to the appellant, submitted by the prosecution on October 4, 1989.

Having reviewed the evidence in this matter, we conclude that the testimony in question constitutes inadmissible hearsay evidence and that the due diligence requirement was not satisfied. We therefore reverse and remand this matter for a new trial.

Reversed and remanded.

---

**4.** The record in *Jacobs* indicated that the potential witness had been residing in Louisiana prior to trial. Although the potential witness indicated that he would voluntarily return to West Virginia for the trial, no summons was issued in Louisiana. *Jacobs*, 171 W.Va. at 305, 298 S.E.2d at 841.