IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

FILED

**May 2, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-13

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

BRIAN ALLEN MERCHANT JONES,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes
Case No. CC-24-2021-F-138

AFFIRMED
_____

Submitted:  March 19, 2025
Filed:  May 2, 2025

Ronald N. Walters, Jr., Esq.
Walters Law Firm, PLLC
Charleston, West Virginia
Counsel for the Petitioner

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.       "Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless:  1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules." Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990).

2.       "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."  Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W. Va. 246, 140 S.E.2d 466 (1965).

3.       "In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect."  Syl. Pt. 6, *State v. Payne* 167 W. Va. 252, 280 S.E.2d 72 (1981).

4.       "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal:  (1) the degree to which the

prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

5.      "An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case." Syl. Pt. 3, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996).

6.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

7.      West Virginia's statute prohibiting the use or presentment of a firearm in the commission of a felony, West Virginia Code § 61-7-15a, is clear and unambiguous and applies to all felonies, not specific classes of felonies.

ARMSTEAD, J.:

Petitioner Brian Allen Merchant Jones appeals the plea and sentencing order entered by the Circuit Court of Marion County on December 9, 2022 sentencing him for conspiracy to commit felony controlled substance offenses, use of a firearm in the commission of a felony, possession of a firearm by a prohibited person, and involuntary manslaughter. On appeal, the petitioner asserts that the circuit court erroneously: (1) permitted the State to elicit inadmissible hearsay testimony during his trial; (2) denied his requests for a mistrial due to the State's introduction of inadmissible flight evidence during its closing arguments; (3) denied his motion for a new trial due to numerous issues during the trial including the admission of improper 404(b) evidence; and (4) denied his motions for judgment of acquittal due to insufficient evidence on the charges of conspiracy and use or presentation of a firearm during the commission of a felony.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court did not err and affirm the petitioner's convictions.

1

## I. FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of September 15, 2020, the petitioner shot and killed his childhood friend, Zackerie Howser. Following the shooting, the petitioner was indicted for: (1) conspiracy to commit felony controlled substance offenses; (2) use of a firearm in the commission of a felony[1]; (3) possession of a firearm by a prohibited person; and (4) involuntary manslaughter. According to the State, the victim and the petitioner were close friends who had been involved in the sale of marijuana in the past and had expanded their business to trafficking methamphetamine. Just prior to one such delivery of methamphetamine, the petitioner shot and killed Mr. Howser.

The petitioner's trial began on April 6, 2022. Prior to opening statements, the petitioner entered guilty pleas to possession of a firearm by a prohibited person and involuntary manslaughter.[2] He proceeded to trial on the conspiracy charges as well as the charge of use of a firearm in the commission of a felony. During the trial, the State called six witnesses: two officers from the Fairmont Police Department; the mother and

---

[1] For ease of reference, we refer to the crimes as they were identified in the petitioner's Indictment. Count II "use of a firearm in the commission of a felony" is sometimes also referred to use or presentment of a firearm.

[2] The petitioner did not plead guilty pursuant to a plea agreement. Further, he does not assign error to his guilty pleas or his convictions for the crimes of possession of a firearm by a prohibited person and involuntary manslaughter.

2

stepfather of the victim; Ms. Pare, an individual who had made plans to purchase methamphetamine from the victim; and the victim's girlfriend.

The evidence elicited at trial revealed that, at the time of the shooting, the victim, Zackerie Howser, lived at home with his mother and step-father in Marion County, West Virginia. On the night before the shooting, the victim, the victim's brother, and several friends, including the petitioner, attended a party. The victim's girlfriend had been informed that one of the individuals among the group that attended the party had obtained a gun that night. After leaving the party, the victim returned home, and during the early morning hours of September 15, 2020, the victim's mother, Chrissy Riffle, spoke with her son and learned that he was selling methamphetamine and was planning to sell methamphetamine in the early morning hours of September 15, 2020. Although Ms. Riffle knew that her son had been selling marijuana, she was unaware that he had begun selling methamphetamine. At the same time that she was having this conversation with her son, Ms. Riffle testified that she was able to observe and read text messages that her son was sending and receiving from a girl named Amber regarding a methamphetamine sale. Ms. Riffle expressed her concern to her son and tried to get him to stay home, but he told her not to worry because he was going to be with the petitioner, and they would be fine. The petitioner objected to this testimony on the ground of hearsay, and the circuit court overruled the objection after concluding that the testimony was not being offered for the truth of the matter asserted.

3

Ms. Pare testified that she had been in contact with the victim prior to the shooting to arrange for a delivery of methamphetamine. During their communications, the victim told her that he did not have the methamphetamine in his possession and was waiting on "his person" to bring the methamphetamine to him. Ms. Pare's last communication with the victim occurred minutes before the shooting. At that time, Ms. Pare testified that she spoke with the victim on the phone, and he told her that "his dude" had just arrived so he would be on his way to meet her. By that time, the petitioner had arrived at the victim's home, and within minutes, the petitioner shot the victim. Ms. Riffle testified that she was awakened by a loud noise in her house. When she went to investigate, she ran into the petitioner in her hallway, and he told her that her son had shot himself.

Two officers from the Fairmont Police Department arrived first on the scene and found the victim with a gunshot wound to his head. The victim's girlfriend, Shauna Wine, testified that she knew that the victim and the petitioner were supposed to meet Ms. Pare. Ms. Wine testified that the victim was supposed to come to her house after he and the petitioner met with Ms. Pare, and she assumed that the petitioner would come to her house with the victim after the meeting. After the shooting, the petitioner called Ms. Wine and apologized for the shooting. The State also presented testimony of another conversation directly involving a drug transaction near the time of the shooting between

4

the victim and C.J. Whitecotton.  The communication between the victim and C.J. Whitecotton contained extensive references to the petitioner.[3]

During the petitioner's closing argument, his counsel told the jury that "[the petitioner] has done the right thing.  He stood up in this courtroom and pled guilty to that.  He took responsibility for what he's done.  He stood up there and said that's what happened."  In its rebuttal closing arguments, the State responded to the petitioner's claim that he had taken responsibility for his actions by telling the jury "[s]o no he didn't take responsibility for it.  He told that mother that her son had done it to himself.  And ran, like a coward, for months and months . . . Five months later he turns himself in.  That's not taking responsibility."    The petitioner made a timely objection and moved for a mistrial arguing that the State had introduced inadmissible flight evidence.  The circuit court denied the motion for a mistrial.

The petitioner's trial concluded on April 7, 2022, and the jury convicted him of both conspiracy to commit felony controlled substance offenses and use of a firearm in the commission of a felony.  On April 20, 2022, the petitioner filed post-trial motions seeking a judgment of acquittal or, in the alternative, a new trial.  In June 2022, the State filed a recidivist information against the petitioner based upon a prior felony conviction.

---

[3] The communications referenced the petitioner by his nicknames, "Taz" and "Chef Taz."

By order entered on September 23, 2022, the circuit court denied the petitioner's post-trial motions, and on December 1, 2022, the petitioner pled guilty to the recidivist information. By order entered on December 9, 2022, the petitioner was sentenced to fifteen years of incarceration for conspiracy to commit felony controlled substances offenses;[4] ten years of incarceration for use of a firearm in the commission of a felony, to be served consecutively to the first sentence; five years of incarceration for possession of a firearm by a prohibited person, to be served concurrently with the second sentence; and one year in jail for involuntary manslaughter, to be served consecutively to all other sentences.

Petitioner now appeals his convictions.

## II. STANDARDS OF REVIEW

Initially, the petitioner asserts that the circuit court erred by admitting inadmissible hearsay evidence during his trial. When analyzing this assignment of error, we are guided by the following:

> First, an interpretation of the West Virginia Rules of Evidence presents a question of law subject to de novo review. Second, a trial court's ruling on the admissibility of testimony is reviewed for an abuse of discretion, "but to the extent the [circuit] court's ruling turns on an interpretation of a [West Virginia] Rule of Evidence our review is plenary."

---

[4] The sentence was enhanced by West Virginia Code § 61-11-18(b).

6

*State v. Sutphin*, 195 W. Va. 551, 560, 466 S.E.2d 402, 411 (1995) (quoting *Gentry v. Mangum*, 195 W. Va. 512, 518, 466 S.E.2d 171, 177, n.4 (1995)).

The petitioner also assigns error to the circuit court's refusal to grant his motions for a mistrial, a new trial, and for a judgment of acquittal. The standards of review applicable to these assignments of error are as follows: "The decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008). We also employ an abuse of discretion standard of review when reviewing a circuit court's ruling on a motion for a new trial. *Tennant v. Marion Health Care Found.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995). "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based on the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted).

## III. DISCUSSION

In his appeal before this Court, Petitioner argues that the circuit court erroneously: (1) admitted inadmissible hearsay evidence; (2) denied his motions for a mistrial due to the introduction of inadmissible flight evidence during closing arguments; (3) denied his motion for a new trial due to numerous issues during his trial ; and (4) denied his motions for judgment of acquittal due to insufficient evidence.

7

A.    HEARSAY

In the petitioner's first assignment of error, he asserts that the circuit court erroneously permitted the introduction of inadmissible hearsay testimony during his trial. The testimony of which the petitioner complains is the testimony of the victim's mother, Chrissy Riffle. The petitioner describes the contested evidence as "evidence that the [victim] was engaging in a conversation regarding the sale, and proposed price for the sale, of methamphetamine." During trial, Ms. Riffle testified about a conversation that she had with her son prior to his death, and she also testified about text messages that she personally observed her son send and receive about a drug sale. According to Ms. Riffle, she was aware that her son sold marijuana, but it was not until she saw the negotiated price for a drug sale on his phone that she became aware that he was selling methamphetamine. Specifically, she testified that the price she saw in text messages exchanged between her son and Amber Pare concerned her because she felt that it was too high for marijuana. When she expressed her concern to her son, her son told her that he was selling methamphetamine.[5]

The petitioner objected to this testimony on the ground of hearsay, and the State disputed that the conversation was hearsay. The circuit court overruled the objection

_____

[5] Ms. Riffle testified that her son told her that he was selling "ice," which she clarified meant methamphetamine.

after concluding that the testimony was not being offered for the truth of the matter asserted.[6]   Thereafter, Ms. Riffle testified that she personally observed Facebook messenger messages that were being sent from her son to Ms. Pare and from Ms. Pare to her son.  According to Ms. Riffle, the messages concerned Ms. Pare's plan to purchase methamphetamine from the victim.

Rule 801(c) of the West Virginia Rules of Evidence defines hearsay as a "statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  *See State v. Phillips*, 187 W. Va. 205, 208, 417 S.E.2d 124, 127 (1992) ("Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' W. Va. R. Evid. 801(c).")   Clearly, Ms. Riffle testified about statements that were made by declarants (the victim and Ms. Pare) outside the petitioner's trial and therefore, meet the first requirement of the definition of hearsay.

We now move to whether the State offered the testimony "to prove the truth of the matter asserted" in the statements.

---

[6] In his post-trial motion for judgment of acquittal/motion for new trial, the petitioner raised this argument and asserted that he should be granted a new trial due to the admission of "numerous statements alleged to have been made by the [victim]," which he alleged were hearsay.  The circuit court disagreed and ruled, in part, that the "State did not introduce any inadmissible evidence at trial[.]"

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990).

Before the circuit court and before this Court, the petitioner asserts that the State offered this testimony for the truth of the matter asserted, i.e., evidence that the petitioner's alleged co-conspirator was engaging in a conversation regarding the sale of methamphetamine. Further, the petitioner argues that this evidence was used to "link" methamphetamine sales by the victim and the petitioner. *See State v. Phillips*, 187 W. Va. 205, 417 S.E.2d 124 (finding reversible error based on the admission of hearsay testimony that the court concluded was offered for the truth of the matter asserted because it alone provided the "fundamental link" between the accused and the crime for which he had been charged.)

At trial, the State argued that the testimony at issue was not offered for the truth of the matter asserted. The statements attributed to Ms. Pare concerned negotiations regarding the price of the methamphetamine she planned to purchase from the victim. Ms. Pare was not on trial, and our review of the record leads us to conclude that the State was

10

not offering her statements to prove the specific amount that she was willing to pay. Therefore, we conclude that the statements attributed to Ms. Pare were not offered for the truth of the matters asserted and were properly admitted as non-hearsay testimony. The statements attributed to the victim (via a conversation with his mother and through text messages) concerned his plan to sell methamphetamine. The State did not provide any other purpose for which the victim's statements were offered, and we are unable to discern any other purpose. Given the nature of the victim's statements and the link that they provided to the charged crime of conspiracy, we conclude that Ms. Riffle's testimony regarding statements attributed to her son was offered for the truth of the matters asserted, and the statements are, therefore, hearsay.

Our conclusion that the statements attributed to the victim were hearsay is not, however, the end of our analysis. These statements may be admissible if they fall within an exception to the rule against hearsay. *See State v. Sutphin,* 195 W. Va. 551, 560, 466 S.E.2d 402, 411 (1995) ("Hearsay is not admissible unless it falls under one of the exceptions to the hearsay rule. W. Va. R. Evid. 802."). The State asserts that Rule 804(b)(3) of the West Virginia Rules of Evidence, which provides an exception for statements against interest by a declarant who is unavailable, applies in this case and renders the evidence at issue admissible.[7]

---

[7] The State also asserts that the exception found in Rule 803(3), which provides an exception for statements of a "declarant's then-existing state of mind (such as motive,

11

Because this assignment of error relates to two different types of extrajudicial statements (text messages that Ms. Riffle personally observed on her son's phone and statements made by the decedent to his mother during a conversation hours before his death), we will analyze each class of alleged hearsay separately.[8]

With respect to the text messages, we begin by noting the unique circumstances of this case. Ms. Riffle testified that she personally observed text messages as they were being sent and received on her son's phone. For this reason, we will treat this evidence as though Ms. Riffle overheard a conversation between her son and Ms. Pare. The statements attributed to the victim were indicative of a plan to sell methamphetamine, which included negotiations regarding the price.

---

intent, or plan) applies in this case. Because we conclude that Rule 804(b)(3) applies, we will not address the State's alternate argument regarding Rule 803(3).

[8] During oral argument, the petitioner also referenced text messages between the victim and C.J. Whitecotton as part of his hearsay argument. As those messages were not raised in his brief, we decline to address this argument. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

Rule 804(b)(3) provides an exception for statements provided by a declarant who is unavailable and who provided a statement that:

(A) A reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The application of this exception to the text messages is straightforward. At the time Ms. Riffle testified about the text messages sent by her son, her son was unavailable as a witness. Further, the messages he sent regarding his plan to sell methamphetamine would have exposed him to criminal liability.

Turning to the statements made by the victim to his mother during a conversation at their home hours before his death, our analysis is the same. The victim detailed his plan to sell methamphetamine, which could certainly have exposed him to criminal liability, and he was unavailable as a witness. The circumstances surrounding both the text messages and the conversation also indicate its trustworthiness as the statements were made by a son to his mother in response to her concerns about his safety due to the escalation of his drug dealing. *See* W. Va. R. Evid. 804(b)(3)(B).

13

For the foregoing reasons, we conclude that the disputed hearsay testimony regarding statements attributed to the victim were admissible pursuant to the exception provided for in Rule 804(b)(3). Despite the circuit court's failure to rely upon the Rule 804(b)(3) when it overruled the petitioner's hearsay objection, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

## B.    FLIGHT EVIDENCE

In his second assignment of error, Petitioner alleges that the circuit court erred by denying his motion for a mistrial following the State's reference to his flight in its closing argument. According to the petitioner, despite the State's representation that it did not intend to use flight evidence[9], it did so during its rebuttal closing argument. The petitioner asserts that the introduction of flight requires this Court to reverse his convictions and remand his case with instructions to grant his motion for a mistrial.

---

[9] During the testimony of Ms. Pare, the State asked her a question about the petitioner being "on the run from the police[.]" The petitioner objected on the basis that the State had not provided any notice of its intent to use flight evidence. The State represented that it would not get into the issue of flight any more than it had already touched upon the issue with the previous question. In addition, the State acknowledged that it had submitted an instruction regarding flight, but that a pretrial hearing had not been held regarding the issue. The circuit court sustained the petitioner's objection.

14

Despite the petitioner's belief that the mere mention of flight should have resulted in a mistrial, we are compelled to review the context of the statements. During the petitioner's closing argument, his counsel stated: "Mr. Jones has done the right thing. He stood up in this courtroom and pled guilty to that. He took responsibility for what he's done. He stood up there and said that's what happened."

In its rebuttal closing argument, the State responded to the petitioner's claim that he accepted responsibility as follows:

> And did he take responsibility? Really? Really? He tells Chrissy your dumb son just shot himself in the head with my gun, twice . . . So no he didn't take responsibility for it. He told that mother that her son had done it to himself. And ran, like a coward, for months and months . . . Five months later he turns himself in. That's not taking responsibility.

Following the jury being excused to begin its deliberations, the petitioner moved for a mistrial. The State acknowledged its statements that the petitioner fled the scene and remained at large for months before he surrendered, but that the statements about flight were made "only in response to [the petitioner] saying he accepted responsibility for his actions." The State further argued that it did not present evidence that the petitioner "fled from law enforcement."

The circuit court told the parties that it "would have preferred that [the State] not have made those comments even in closing argument[,]" but it denied the petitioner's

15

motion as the jury had previously been instructed that comments made by the lawyers were not evidence.

We note, initially, that evidence of flight is not per se inadmissible:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

Syl. Pt. 6, *State v. Payne*, 167 W. Va. 252, 280 S.E.2d 72 (1981). However, the procedural protections contemplated in *Jessie* were not observed here because it was not offered during the State's case as traditional, affirmative "flight evidence" but rather during rebuttal in closing arguments in apparent response to the petitioner's claims of taking responsibility for his actions. Even so, we do not find that the comments rose to the level of demanding a mistrial given the context in which they were made and their limited effect.

We have held:

> The decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of a manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect

16

of an acquittal of the accused and gives rise to a plea of double jeopardy.

*State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008) (internal citations omitted). The issue, then, is whether the comments made by the State resulted in a "manifest necessity" that required the circuit court to discharge the jury before it rendered its verdict, and based on our analysis of the prosecutorial misconduct standard we disagree that there was a manifest necessity to discharge the jury based on the comments during rebuttal:

> In determining whether a statement made or evidence introduced by the prosecution represents an instance of misconduct, we first look at the statement or evidence in isolation and decide if it is improper. If it is, we then evaluate whether the improper statement or evidence rendered the trial unfair. Several factors are relevant to this evaluation, among them are: (1) The nature and seriousness of the misconduct; (2) the extent to which the statement or evidence was invited by the defense; (3) whether the statement or evidence was isolated or extensive; (4) the extent to which any prejudice was ameliorated by jury instructions; (5) the defense's opportunity to counter the prejudice; (6) whether the statement or evidence was deliberately placed before the jury to divert attention to irrelevant and improper matters; and (7) the sufficiency of the evidence supporting the conviction. *See generally Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

*State v. Guthrie*, 194 W. Va. 657, 677 n.25, 461 S.E.2d 163, 183 n.25 (1995).

Viewing the statements in isolation, we agree that the comments regarding flight were improper. *Guthrie* instructs us to now determine whether the statements

17

rendered the trial unfair. In making this decision, we are guided by the factors enumerated in *Guthrie, supra,* as well as the following:

> [f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995).

In addition to articulating the factors to be examined when analyzing an alleged prejudicial prosecutorial remark, *Sugg* also "clarified that not every improper prosecutorial remark will result in reversal of a conviction: 'A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice.'" *State v. Mills*, 219 W. Va. 28, 35, 631 S.E.2d 586, 593 (2005) (quoting Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995)).

Although we find the statements at issue in this case to be improper, we agree with the State that the statements did not render the trial unfair. First, the jury was specifically instructed that counsel's statements are not evidence, so there was a low likelihood that the jury was misled by the comment to the extent that it prejudiced the

18

petitioner and was further tempered by the instruction. Second, this singular comment was made not during the State's case, but in rebuttal during closing arguments in direct response to the petitioner's closing statements where he argued he had taken responsibility for his action. Therefore, the comments were not only isolated but isolated to *argument* by counsel after the close of evidence. Moreover, the comments were invited by the defense and not deliberately placed in front of the jury to divert attention to extraneous matters. Finally, we agree with the State that the strength of the case was sufficient to support the convictions absent the remark about flight.

For these reasons, we conclude that the circuit court "acted within appropriate bounds of discretion" as it relates to this assignment of error and affirm the circuit court's decision in this regard. *State v. Lowery*, 222 W. Va. at 288, 664 S.E.2d at 173.[10]

C.    MOTION FOR NEW TRIAL

---

[10] In its order denying the petitioner's post-trial motions, the circuit court "found and concluded that arguments in the State's rebuttal argument regarding [the petitioner's] prolonged avoidance of law enforcement did not constitute evidence or argument of 'flight' and came only after counsel for [the petitioner] argued that [the petitioner] had accepted responsibility for his actions." To the extent that we have concluded that the statements regarding flight were improper but did not render the trial unfair, we note that [t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

In his third assignment of error, the petitioner alleges that the circuit court abused its discretion by denying his motion for a new trial based upon what the petitioner describes as "numerous issues during the trial." Because we have addressed the petitioner's arguments regarding hearsay and flight, we focus our attention on the petitioner's remaining argument that a new trial was warranted on the basis that the circuit court improperly admitted Rule 404(b) evidence regarding a prior conspiracy to deliver marijuana between the petitioner and the victim in violation of Rule 404(b) of the West Virginia Rules of Evidence and without observing the procedural requirements for its admission as set forth in the syllabus of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

Specifically, during the petitioner's trial, Shauna Wine was asked if she was aware that the victim and the petitioner were selling marijuana together. The petitioner objected and noted that the State had not filed a 404(b) notice as to any conspiracies other than the conspiracy related to methamphetamine. The State responded that the question was intended to show that Ms. Wine was unaware of the methamphetamine conspiracy, and the circuit court overruled the objection. Subsequently, Ms. Wine testified that she had knowledge of the victim and the petitioner selling marijuana, but she did not know that they were selling methamphetamine.

Under Rule 404(b)(1) of the West Virginia Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, this type of evidence may be admissible for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." W. Va. R. Evid. 404(b)(2). Importantly, any party that seeks to admit such evidence for the purposes enumerated above must provide notice of its intent to do so. *Id.*

It is undisputed that the State did not provide notice pursuant to Rule 404 regarding a marijuana delivery conspiracy. However, the State argues, and we agree, that no notice was required as the evidence at issue was intrinsic and thus not subject to the strictures of Rule 404(b). "Our cases have 'consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b).' *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013)." *State v. McKinley*, 234 W. Va. 143, 155, 764 S.E.2d 303, 315 (2014). Further,

> [r]ule 404(b) only applies to limit the admissibility of evidence of extrinsic acts. Intrinsic evidence, on the other hand, is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted. That is, intrinsic evidence of a crime is admissible without analysis pursuant to Rule 404(b). * * *

1 Louis J. Palmer, Jr., *Handbook on Evidence for West Virginia Lawyers*, § 404.04[5][a] (7th ed. 2021). "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a

21

'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock*, 196, W. Va. 294, 312 n. 29, 470 S.E.2d 613, 631 n. 29 (1996).

At a hearing on the petitioner's post-trial motions, the State argued that the marijuana sales conducted by the petitioner and the victim were "intrinsic evidence of the ongoing drug conspiracy" between the petitioner and the victim. In addition, the State argued that previous drug transactions involving marijuana were intrinsic to the petitioner's and the victim's "intent to distribute not just marijuana, but now additional controlled substances."

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence . . . is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context[.]"

*State v. Harris*, 230 W. Va. 717, 721, 742 S.E.2d 133, 137 (2013) (citations omitted). We agree with the State and conclude that, under the facts of this case, the marijuana conspiracy is intrinsic evidence of the crimes charged. Accordingly, the circuit court did not err as to this issue.

D.   MOTION FOR JUDGMENT OF ACQUITTAL – SUFFICIENCY OF THE EVIDENCE

In his final assignment of error, the petitioner asserts that circuit court erred by denying his motion for judgment of acquittal due to the insufficiency of the evidence presented by the State. The petitioner's argument encompasses the following two

assertions: (1) the elements of West Virginia Code § 61-7-15a are incompatible with a conspiracy crime as the predicate felony; and (2) the State did not present sufficient evidence for him to be convicted of conspiracy to commit felony controlled substance offenses and use of a firearm in the commission of a felony. More pointedly, the petitioner contends that the crime of conspiracy, as a general prospect, cannot serve as the predicate felony for his conviction for the use of a firearm in the commission of a felony because, as an inchoate crime, conspiracy is not an "active" crime.

> West Virginia Code § 61-7-15a provides that
>
> As a separate and distinct offense, and in addition to any and all other offenses provided for in this code, any person who, *while engaged in the commission of a felony*, uses or presents a firearm shall be guilty of a felony and, upon conviction, shall be imprisoned in a state correctional facility for not more than ten years.

(emphasis added).

The petitioner contends that the phrase "uses or presents" refers to an "intentional use or brandishing which furthers or advances the goals of the predicate felony." For these reasons, the petitioner asserts that the predicate felony contemplated in West Virginia Code § 61-7-15a "most logically applies to" an "active" felony such as robbery, kidnapping, or rape. We disagree and find that the plain language of the statute is contrary to the petitioner's limited approach.

23

"When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). The petitioner suggests that this Court should interpret West Virginia Code § 61-7-15a and conclude that the predicate felony must be an "active" felony. However, the statute does not include any such requirement. "It is not for this Court arbitrarily to read into … [a statute], that which it does not say." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (internal citation omitted). West Virginia Code § 61-7-15a criminalizes the act of using or presenting a firearm during the commission of "*a felony*." (emphasis added). The fact that conspiracy is an incomplete crime is beside the point when the Legislature has criminalized that conduct and classified it as a felony. This statute in no way limits the term "a felony" to only so dubbed "active" crimes, nor does it prohibit inchoate felonies from serving as the predicate felony. We therefore hold that West Virginia's statute prohibiting the use or presentment of a firearm in the commission of a felony, West Virginia Code § 61-7-15a, is clear and unambiguous and applies to all felonies, not specific classes of felonies.

Embedded in this assignment of error is the petitioner's additional assertion that there was insufficient evidence to support his convictions. According to the petitioner, the evidence supporting his convictions was highly circumstantial. The petitioner

24

complains that the only evidence connecting him to his alleged co-conspirator consisted of the victim referencing the petitioner's name while he was communicating with a third party and a suggestion that the petitioner was using a cell phone of another person that was proven to be used to communicate with the co-conspirator. Further, he argues that he was not found to be in possession of illegal substances, cash or any other indication of being involved in an active drug conspiracy.

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). The petitioner's convictions can be reversed due to insufficient evidence "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. LaRock*, 196 W. Va. at 303, 470 S.E.2d at 622.

In support of his argument in this regard, the petitioner believes that his case fits the "narrow circumstances," which will permit this Court to conclude that the evidence presented in this case was "simply insufficient[.]" This argument is premised on the mistaken perception that because the evidence of the conspiracy and shooting was largely circumstantial and not "on page," that the jury could not reach a finding of guilt beyond a reasonable doubt. We have explained that "there is no qualitative difference between direct and circumstantial evidence." *Guthrie*, 194 W. Va. at 669, 461 S.E.2d at 175. Further, the jury is permitted to make reasonable inferences stemming from that evidence in rendering

25

its verdict, and, in reviewing challenges to the sufficiency of the evidence to support a conviction, this Court is obligated to "credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt." *Id.*

We disagree with the petitioner that the evidence adduced was insufficient to support the petitioner's conviction. The jury in this case heard testimony from the victim's mother that her son was planning to sell methamphetamine on the night in question, and the victim told his mother that he would be safe because he would be with the petitioner. The State also presented testimony that the victim had been waiting on a person to bring methamphetamine to him so that it could be delivered to Ms. Pare and that the petitioner arrived at the victim's house shortly thereafter. Finally, and specific to the use of the firearm during the commission of the conspiracy, the jury heard evidence that tended to show the victim was waiting on the petitioner to bring the methamphetamine to his home so that he could deliver it to Ms. Pare. The victim sent a message to Ms. Pare at 2:54 a.m. that "his dude" had arrived and the 9-1-1 call made after the shooting was placed only a few minutes after that time. Drawing all inferences and credibility determinations in favor of the prosecution, we conclude that a rational trier of fact could have found that the essential elements of the crimes for which the petitioner was convicted were satisfied beyond a reasonable doubt. As we have previously explained, "appellate review is not a device for this Court to replace a jury's finding with our own conclusion" and "a jury's

26

verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id*. at 669-670, 461 S.E.2d at 175. Because we conclude that the petitioner has failed to meet that heavy burden, we affirm.

## IV. CONCLUSION

For the foregoing reasons, the December 9, 2022 plea and sentencing order entered by the Circuit Court of Marion County, West Virginia, is affirmed.

Affirmed.